UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WARREN G. TREME, ET AL.** | **CIVIL ACTION** |
| VERSUS | No. 21-1607<br>c/w 22-19<br>REF: ALL CASES |
| **ST. JOHN THE BAPTIST PARISH, ET AL.** | SECTION I |

### ORDER & REASONS

Before the Court is a motion[1] for summary judgment filed by defendants St. John the Baptist Parish and St. John the Baptist Parish Council (collectively, "defendants"). Plaintiffs Warren G. Treme, AIMS Group, Inc., Fred Kinsley, and AJSJS Development, LLC, individually and as a joint venture (collectively, "plaintiffs") oppose[2] the motion. For the reasons below the Court grants the motion.

### I.    FACTUAL BACKGROUND

Plaintiff Warren G. Treme, through AJSJS Development, LLC, entered into a solid mineral lease ("the Montegut Mineral Lease") with Dr. Christy Montegut and his siblings, the owners of a tract of land (the "Montegut Tract") in St. John the Baptist Parish.[3] AJSJS Development, LLC then joined the joint venture formed

---

[1] R. Doc. Nos. 134 (motion for summary judgment), 135 (supplemental memorandum), 155 (reply to plaintiffs' memorandum in opposition).
[2] R. Doc. Nos. 145 (memorandum in opposition) and 142 (exhibits). The plaintiffs filed their lawsuit as a joint venture on August 25, 2021, E.D. La. Case. No. 21-1607, and the plaintiffs filed their lawsuit in their individual capacities on January 5, 2022, E.D. La. Case No. 22-19. The actions were consolidated into E.D. La. Case No. 21-1607 on February 10, 2022. R. Doc. No. 58.
[3] R. Doc. No. 134-1, at 1; R. Doc. No. 145, ¶¶ 1–3.

between Warren G. Treme, AIMS Group, Inc., Fred Kinsley in 2010[4] "for the purpose of mining, excavating, removing and processing clay material from the [Montegut Tract] . . . and to make the clay material available at a fair market price to the U. S. Army Corps of Engineers . . . and/or its contractors for the construction of the West Shore Lake Pontchartrain Hurricane and Storm Damage Risk Reduction Project (the 'WSLP Project')."[5] The Montegut Mineral Lease contained the following provision:

> [T]his Lease shall be for a period of Three (3) years from the date Lessee procures approval to commence operations from local, state and federal authorities, as needed[.][6]

The Montegut Tract has been zoned as "residential district one" ("R-1") "since the inception of the Parish's zoning law[s] in 1984."[7] As the few permitted uses for land zoned R-1 are uses such as single-family residences, churches, and schools,[8] Dr. Christy Montegut filed two applications to have the Montegut Tract rezoned to "rural" to allow for the mining of clay.[9] The first application was filed on June 2, 2020, and the second was filed on March 9, 2022.[10] The St. John the Baptist Parish Council denied both rezoning applications.[11]

---

[4] R. Doc. No. 78, ¶ 15. *See also* R. Doc. No. 77, ¶ 15.
[5] R. Doc. No. 78, ¶ 3. *See also* R. Doc. No. 77, ¶ 3.
[6] R. Doc. No. 134-5, at 1.
[7] R. Doc. No. 134-1, at 14; R. Doc. No. 78, ¶ 26; R. Doc. No. 77, ¶ 26.
[8] R. Doc. No. 145, ¶ 11. *See* La. Parish Code § 113-180.
[9] A "rural" classification permits use of the land for "[e]xcavation of minerals, or materials including, but not limited to, sand, gravel, rock, clay, ores, liquid or gaseous fossil, [sic] fuels[.]" La. Parish Code § 113-165 (16).
[10] R. Doc. No. 145-1, ¶¶ 6, 15.
[11] *Id.* ¶¶ 16, 24.

The plaintiffs filed this lawsuit in federal court, seeking declaratory relief, injunctive relief, compensation for "the permanent *per se* regulatory taking of plaintiffs' real and personal property in violation of the Takings Clause of the United States Constitution . . . and the Louisiana Constitution[,]" and damages for "the deprivation of procedural and substantive due process rights and from the denial of the right to equal protection guaranteed by the Due Process and Equal Protection Clauses of the United States Constitution[.]"[12] Defendants now seek summary judgment on all of plaintiffs' claims against them.[13]

## II.  STANDARD OF LAW

### a.  Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190,

---

[12] R. Doc. No. 1, ¶ 1; R. Doc. No. 78, ¶ 1; R. Doc. No. 77, ¶ 1.
[13] R. Doc. No. 134, at 1.

1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).

If the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must then articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). These facts must create more than "some metaphysical

doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "A non-movant will not avoid summary judgment by presenting "speculation, improbable inferences, or unsubstantiated assertions." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quotation and citation omitted). The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Anderson*, 477 U.S. at 255.

If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

### b. The Takings Clause of the U.S. Constitution

The Takings Clause of the Fifth Amendment of the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Supreme Court distinguishes between "acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other[.]" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002). To be an unconstitutional regulatory taking, the taking need not be a "physical appropriation" and the property need not have been put to public use—"'if regulation goes too far it will be recognized as a taking.'" *Id.* (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

The Takings Clause does not create property interests—it merely protects them. Therefore, "to prevail on a takings claim, a plaintiff first must demonstrate that he has a protectable property interest." *Dennis Melancon, Inc. v. City of New*

*Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). "'[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law.'" *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 322 (5th Cir. 2022) (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quotation omitted)).

The Louisiana Supreme Court has recognized that "property includes not only physical objects, but the rights that persons have which flow through the physical objects, such as ownership, servitudes, and leases. Those property rights can be taken or damaged without physical invasion." *Progressive Waste Sols. of La., Inc. v. Lafayette Consol. Gov't*, No. 12-00851, 2015 WL 222396, at *2 (W.D. La. Jan. 14, 2015), *aff'd sub nom. Progressive Waste Sols. of La., Inc. v. Lafayette City-Par. Consol. Gov't*, 617 F. App'x 372 (5th Cir. 2015) (quoting *State of La., through Dep't of Transp. & Dev. v. Chambers Inv. Co., Inc.*, 595 So.2d 598 (La. 1992)). Under Louisiana law,

> the essential features of the 'bundle of rights' commonly characterized as "property" are: (1) usus—the right to use or possess, i.e., hold, occupy, and utilize the property; (2) abusus—the right to abuse or alienate, i.e., transfer, lease, and encumber the property, and (3) fructus—the right to the fruits, i.e., to receive and enjoy the earnings, profits, rents, and revenues produced by or derived from the property.

*Melancon*, 703 F.3d at 269 (quoting *Rodrigue v. Rodrigue*, 218 F.3d 432, 436–37 (5th Cir. 2000)).

### c.   Standing

Article III of the U.S. Constitution limits federal jurisdiction to justiciable "Cases" and "Controversies." *Three Expo Events, L.L.C. v. City of Dallas, Tex.*, 907

6

F.3d 333, 340 (5th Cir. 2018). A plaintiff must have standing to meet the "case-or-controversy" requirement. *McCardell v. U.S. Dep't of Hous. and Urb. Dev.*, 794 F.3d 510, 516–17 (5th Cir. 2015). Without standing, a plaintiff's claim may not proceed. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010).

As stated by the Supreme Court in *Lujan v. Defenders of Wildlife*, "the irreducible constitutional minimum of standing contains" as its first element the requirement that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical[.]" 504 U.S. 555, 560 (1992) (quotations and citations omitted). Louisiana law likewise provides that "an action can be brought only by a person having a real and actual interest which he asserts." La. Code Civ. Proc. Ann. art. 681; *see Ehsani-Landry v. Jefferson Par.*, 17-468 (La. App. 5 Cir. 3/14/18), 240 So. 3d 332, 336 (finding the plaintiff lacked standing to bring action for a taking in violation of the U.S. and Louisiana Constitutions when he "had no ownership interest or property rights in the property").

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III," and it is not subject to waiver. *Joint Heirs Fellowship Church v. Akin*, 629 F. App'x 627, 629 (5th Cir. 2015) (citation omitted). "[S]tanding is . . . determined as of the commencement of the suit." *In re Isbell Records, Inc.*, 774 F.3d 859, 869–70 (5th Cir. 2014). "Plaintiffs have the burden of establishing standing." *Leaming v. Stonegage Mortg.*, No. 16-8511, 2016 WL 5072499, at *1 (E.D. La. Sept. 20, 2016) (Africk, J.) (citing *Akin*, 629 F. App'x at 629). "Since they are not

7

mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

### III.   ANALYSIS

#### a.   Mineral Leases and Contract Interpretation Under Louisiana Law

The lease at issue in this case is a "Solid Mineral Lease with Option to Purchase."[14] A mineral lease "is a contract by which the lessee is granted the right to explore for and produce minerals." La. Stat. Ann. § 31:114. A mineral lease must have a term. La. Stat. Ann. § 31:115(A). "Mineral leases are construed as leases generally and, wherever pertinent, codal provisions applicable to ordinary leases are applied to mineral leases." *Frey v. Amoco Prod. Co.*, 603 So. 2d 166, 171 (La. 1992).

Pursuant to Louisiana law, a lease may contain a suspensive conditional obligation.[15] A "conditional obligation is one dependent on an uncertain event[,]" and, "[i]f the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." La. Civ. Code Ann. art. 1767. Where a contract to lease contains a suspensive condition, "the parties clearly contemplated [that the] suspensive

---

[14] R. Doc. No. 134-5.
[15] "Conditions precedent in a contract—more properly called 'suspensive conditions' under the Louisiana Civil Code—are 'terms that suspend . . . a party's obligation until the occurrence of a condition.'" *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 411 (5th Cir. 2020) (quoting *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 621 (5th Cir. 2005)); *see also City of New Orleans v. Tex. & Pac. Ry. Co.*, 171 U.S. 312, 334, 18 S.Ct. 875, 43 L.Ed. 178 (1898) ("The suspensive condition, under the Louisiana Code, is the equivalent of the condition precedent at common law.").

condition would be fulfilled prior to the existence of a binding contract for lease." *Progressive Waste*, 2015 WL 222396, at *5.

Pursuant to Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046.

### b. Procuring the Zoning Reclassification and Conditional Use Permit are Suspensive Conditions to the Montegut Mineral Lease

Plaintiffs' complaints assert, *inter alia*, that the defendants' denial of plaintiffs' applications to rezone the Montegut Tract from R-1 to Rural constituted a "*per se* regulatory taking of plaintiffs' real and personal property in violation of the Takings Clause" of the United States and Louisiana Constitutions.[16] The defendants' motion for summary judgment contends that the plaintiffs have no recognizable and enforceable property rights as to the Montegut Tract and the clay material it contains because the Montegut Mineral Lease between the Montegut family and the plaintiffs contains an unfulfilled suspensive condition.[17]

This suspensive condition, defendants assert, requires that the plaintiffs procure the necessary approvals from the local government—here, the rezoning of the Montegut Tract and receiving a conditional use permit to dig clay pits—before the lease term begins.[18] The defendants argue that, because neither of the two approvals has been obtained, the Montegut Mineral Lease has not commenced and the plaintiffs

---

[16] R. Doc. No. 77, ¶ 1; *see also* R. Doc. No. 78, ¶ 1.
[17] R. Doc. No. 134-1, at 12.
[18] *Id.*

have no vested property rights in the Montegut Tract. In the absence of a property interest, the defendants further argue, the plaintiffs cannot assert a claim for an unconstitutional taking.

The plaintiffs' opposition counters that the "[t]he Montegut Mineral Lease does not state that approval from local, state or federal authorities is required to commence operations" and "it simply states that approval will be obtained 'as needed.'"[19] Yet the plaintiffs later admit that such approvals are in fact necessary; in their amended responses to the statements of uncontested material facts filed by the defendants, "[p]laintiffs admit they need to obtain a change in the zoning classification and a permit."[20] This is consistent with the plain language of the Montegut Mineral Lease, which states that the three-year term of the lease begins "*from the date Lessee procures approval* to commence operations from *local*, state and federal authorities, as needed."[21] The words of the contract are "clear and explicit and lead to no absurd consequences"; approval by local, state, and federal authorities is required in order for the lease term to commence. La. Civ. Code Ann. art. 2046. Therefore, "no further interpretation may be made" of the parties' intent. *Id.*

In their opposition, the plaintiffs appear to attempt to draw a distinction between what the approvals are needed *for—i.e.* that the approvals are not needed to "commence operations" on the tract, but are only required before the plaintiffs begin mining—to argue that the approvals are not needed for the lease term to have

---

[19] *Id.* at 27.
[20] R. Doc. No. 145-1, at 2.
[21] R. Doc. No. 134-5, at 1 (emphasis added).

10

begun.[22] Yet the plaintiff offers no reason why the Court should ignore the plain language of the contract provision and instead adopt the plaintiffs' strained reading. The approvals are indisputably needed; the "as needed" clause does not somehow imply that the lease could begin prior to the plaintiffs procuring those approvals.

Several communications provided as exhibits by the plaintiffs show that the State of Louisiana and the United States Army Corp of Engineers ("USACE") regarded obtaining the zoning reclassification and conditional use permit as necessary before the Montegut Tract could even be eligible to be a borrow site for clay for the WSLP project, and both expressed the same to the plaintiffs. An October 23, 2020 letter from the State of Louisiana, Governor Edwards, and the Coastal Protection and Restoration Authority states that the

> Montegut [Tract] does not currently meet the USACE criteria to have local permits and zoning in place for operations of a borrow site at the time of the solicitation closing . . . . Additionally, Montegut [Tract] might consider requesting that the USACE use the decisional discretion allowed . . . to waive the local permitting and zoning requirement in order to qualify the Montegut [Tract] for the approved list, assuming . . . Montegut [Tract] shows proof in its submission that it is continuing to pursue local approvals on a timeline that would have them in place by the time the borrow material would be needed by the USACE contractors.[23]

Subsequently, in a March 18, 2021 email from the USACE to a member of the plaintiffs, the USACE states that,

> [a]s part of the submittal review we have been notified by St. John the Baptist that AIMS currently lacks a number of local parish permitting requirements including proper zoning, a conditional

---

[22] Plaintiffs' argument that approval is not needed to "commence operations" is discussed in greater detail in Section III. I. c., *infra*.
[23] R. Doc. No. 142-3, at 1–2.

11

> use permit, and a dirt operation permit . . . . As a result, this site does not currently meet the requirements for consideration as a pre-approved commercial borrow pit . . . . and [the USACE will] pause review of [the plaintiffs'] submittal until such time these requirements are met."[24]

Hence, the local, state, and federal governments regarded procuring a zoning reclassification and a conditional use permit as necessary to commence clay mining operations on the Montegut Tract. And, crucially, the government authorities expressed this to the plaintiffs.

As the approvals are necessary, pursuant to the plain language of the Montegut Mineral Lease's lease term provision, the lease has not yet gone into effect. For the plaintiffs to argue otherwise is inconsistent with the evidence in the record. The Court accordingly finds there is no genuine issue of material fact as to whether obtaining the approvals—*i.e.* the zoning reclassification and the conditional use permit—was an unfulfilled suspensive condition of the lease.

### c. The Minimal Preparations Plaintiffs Have Taken Are Insufficient to Constitute Operations to Trigger the Lease Term

As noted,[25] the plaintiffs offer an alternative interpretation of the Montegut Mineral Lease's lease term provision. While the plaintiffs deny that obtaining the zoning reclassification and the conditional permit are suspensive conditions to the lease, it appears that the plaintiffs alternatively argue that there is only one possible

---

[24] R. Doc. No. 142-50, at 1. The defendants do not assert that a "dirt operation permit" is necessary, only that the zoning reclassification and conditional use permit are required. *See* R. Doc. No. 145-1, at 2 ("In order to dig clay pits, as [the plaintiffs] intend[] to do, the above referenced approval means obtaining a change of zoning classification to Rural and a conditional use permit to dig clay pits.").
[25] *See* Section III. B., *supra.*

suspensive condition—namely, that the plaintiffs need only "commence operations" on the Montegut Tract to trigger the start of the lease's three-year term—which they assert has been fulfilled.

The plaintiffs' amended opposition states that "the evidence in the record shows that operations on the Montegut Tract commenced September 10, 2018 and continued until August 1, 2019 . . . . Consequently, as a result of having commenced operations, the Montegut Mineral Lease has been in full force and effect since its inception."[26]

Plaintiffs reason that, pursuant to Louisiana mineral law and caselaw, "preparatory activities conducted on the land (regardless of whether they require approval from local, state or federal authorities) are sufficient to commence operations."[27] Plaintiffs then list the following preparatory actions they took: procuring a "wetlands delineation in order to obtain a Jurisdictional Determination from [the] U.S. Army Corps of Engineers[,]" in which an environmental scientist "sampled soils and recorded existing vegetation"; an "on-site cultural resources survey"; performing soil borings and gathering soil samples; "site reconnaissance" for an environmental site assessment; preparing "several studies and engineering reports required prior to excavation of the clay from the Montegut Tract and for approval of the clay material by the Corps of Engineers"; and filing a "filed a Joint

---

[26] R. Doc. No. 145, at 27.
[27] *Id.*

13

Permit Application with the Corps and the Louisiana Department of Natural Resources[.]"[28]

Plaintiffs are correct in stating that, pursuant to Louisiana caselaw, actual drilling for oil or excavation of minerals is not required to "commence" a mineral lease.[29] However, that same caselaw counsels that, short of actually beginning to mine, the preliminary or preparatory activities must be extensive to constitute commencement of operations:

> The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease.
>
> If the lessee has performed such preliminary acts within the time limited, and has thereafter actually proceeded with the drilling to completion of a well, the intent with which he did the preliminary acts are [sic] unquestionable, and the court may rule as a matter of law that the well was commenced within the time specified by the lease.

*Cason v. Chesapeake Operating, Inc.*, 47,084 (La. App. 2d Cir. 4/11/12), 92 So.3d 436, *writ denie*d, 2012-1290 (La. 9/28/12), 98 So.3d 840 (quoting *Allen v. Cont'l Oil Co.*, 255 So. 2d 842, 845 (La. App. 2d Cir. 1971), *writ denied*, 260 La. 701, 257 So. 2d 156 (1972)).

---

[28] *Id.* at 25–26.
[29] *Id.* at 24 ("Louisiana mineral law is clear insofar as actual excavation or removal of minerals from the ground is not required to commence operations within the meaning of a mineral lease.").

14

The available caselaw indicates that significant preparation is required for a court to find that operations have commenced. For instance, in *Cason*, the intermediate appellate court found activities such as felling trees, clearing the site, stacking lumber, and building a road and well pad constituted "commenced operations." 92 So.3d 441–43. In *Hilliard v. Franzheim*, another court found that securing a drilling permit, staking the well location, moving lumber onto the site, leveling the site, installing a culvert and cattle guard, and building a board road to the well site satisfied the lease-term requirement that drilling operations commence within 90 days. 180 So. 2d 746, 748 (La. Ct. App. 1965) ("the general rule to be drawn from these decisions is that actual drilling is unnecessary to 'commence' a well within the meaning of the lease provisions; and that substantial surface preparations to drill are sufficient to be considered 'commencement' of drilling operations for lease-clause purposes, such as making and clearing a location, delivering equipment to the well site").

In contrast, the plaintiffs have offered no authority indicating that the minimal preparatory actions they took were sufficient to be considered commencement of operations. As stated, the plaintiffs engaged a scientist to "sample[] soils and record[] existing vegetation" on the Montegut tract "to determine the presence of wetlands on the site[,]" conducted a "cultural resources survey," performed soil borings and gathered soil samples, conducted site reconnaissance for an environmental site assessment, prepared engineering reports, and applied for permits.[30] The plaintiffs

---

[30] *Id.* at 25–26.

15

do not dispute that the Montegut Tract has been not been physically modified in any significant way, such as by clearing vegetation, leveling the ground, or preparing the mine site. Nor do the plaintiffs assert that materials or equipment have been brought onto the site in preparation for mining operations or anticipation of such operations eventually beginning. The absence of more than minimal preparations is particularly significant in light of the discussion of the planned site preparation included in a report prepared by a member of the plaintiffs:

> Site preparation will primarily consist of clearing operations and installing site infrastructure. Clearing operations will remove trees, other surface vegetation, and top soil to the depth required to access suitable clay materials. Clearing operations will require the use of a D6-sized bulldozers and large excavators. The site infrastructure will be installed *prior to beginning excavation operations for commerce.*[31]

Plaintiffs' argument that the preliminary activities they engaged in constituted commencement is further undermined by their exhibit titled "Appendix A – Commercial Borrow Pit Requirements." This document states that, "[f]or a borrow pit to be considered a Commercial Borrow Pit for the WSLP project, it must . . . [h]ave all appropriate federal, state, and local permits."[32] Also required is "[w]ritten evidence that the property intended for use as a Commercial Borrow Pit contains the proper zoning classification that will allow excavation and use it [sic] as a borrow area."[33] Notably, this document also lists as requirements for consideration as a borrow pit site for the WSLP a "wetlands determination" letter, a "Cultural Resource

---

[31] R. Doc. No. 142-42, at 1 (emphasis added).
[32] R. Doc. No. 142-32, at 1.
[33] *Id.* at 4–5.

Survey," and "Environmental Site Assessment," as well as soil boring and analysis[34]—all activities the plaintiffs listed as evidence that they had already commenced operations. Plaintiffs offer no reason why (1) taking each of these actions *except* obtaining the necessary permits and zoning classification was sufficient to constitute commencement of operations, or (2) why taking actions that were required to simply *be eligible* for consideration to serve as a borrow pit in the WSLP project could be considered to have "commenced operations" on that borrow pit.

Accordingly, even under plaintiffs' alternative argument that the only suspensive condition to the Montegut Mineral Lease was simply commencing operations on the tract, there is no material dispute as to the fact that the plaintiffs have not commenced operations.

### d. The Plaintiffs Have No Vested Property Interest in the Montegut Tract and Accordingly Lack Standing

The Court finds that, after reviewing the pleadings, the discovery and disclosure materials, and the affidavits, there is no genuine dispute of material fact that procuring the zoning reclassification and conditional use permit are unfulfilled suspensive conditions to the Montegut Mineral Lease. The Court further finds no genuine issue of material fact in dispute as to whether the minimal preliminary actions the plaintiffs have taken, such as surveying and sampling, are insufficient to constitute commencement of operations. Accordingly, the lease has not yet become

---

[34] *Id.* at 1–3.

effective,[35] and the plaintiffs have no vested property interest in the Montegut Tract or any minerals it may contain. In the absence of a property interest, the plaintiffs have no standing to allege an unconstitutional taking.[36] *See Melancon*, 703 F.3d at 269; *see also Lujan*, 504 U.S. at 560. The Court will therefore grant defendants' motion for summary judgment.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that defendants' motion[37] for summary judgment is **GRANTED** and all of the plaintiffs' claims against the defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants' motion *in limine*[38] to exclude the expert report and opinion testimony of plaintiffs' experts Thomas R. L'Hoste and Harold DeLeo, and defendants' motion *in limine*[39] to exclude all evidence pertaining to the Center for Planning Excellence, Inc. are **DISMISSED AS MOOT**.

---

[35] *See Progressive Waste*, 2015 WL 222396, at *5 ("A 'contract of lease,' binding the parties to the Lease Agreement never occurred because the suspensive condition that [a final certificate of occupancy] would be issued had not been fulfilled making the Lease 'void *ab initio*.'").

[36] As the Court finds that plaintiffs have no property interest in the Montegut Tract sufficient to confer standing, the Court need not reach the parties' arguments concerning the additional constitutional claims the plaintiffs allege. *See* R. Doc. No. 145, at 28–35. The Court will likewise not address plaintiffs' arguments concerning defendants' expert Lydia Jemison. *Id.* at 35.

[37] R. Doc. No. 134.

[38] R. Doc. No. 136.

[39] R. Doc. No. 137.

New Orleans, Louisiana, February 6, 2023.

                                          **LANCE M. AFRICK**
                              **UNITED STATES DISTRICT JUDGE**